BARTLETT, J.
I think the plaintiff was entitled to recover in this action but that the amount of the recovery should have been limited to $1,200. The plaintiff, through his agent, shipped a car load of polo ponies for transportation over the Erie Railroad, from Buffalo to New York. Near Middletown the freight train in which the animals were being carried became separated into three parts, and a collision occurred, which inflicted considerable injury upon a number of the ponies. The proof sufficied to establish the negligence of the defendant, and the only question really litigated related to the effect of a release denominated a “Uniform Live-Stock «Contract,” which was signed by the plaintiff’s agent at the time of the shipment at Buffalo. This agreement limited the liability of the carrier to a sum not exceeding $100 each for horses, and an aggregate amount not exceeding $1,200 upon any car load of animals. The learned trial judge correctly instructed the jury that the defendant had a right to make a contract of this kind, limiting .its liability, and that the plaintiff, when he intrusted his horses to ■the man who signed the release, gave that person the power to *766 make such an agreement with the railroad company. In other words, the agency to ship the animals carried with it the power to> make a contract as to the terms and conditions of the shipment; so that, unless the plaintiff was able in some way to avoid the agreement which his agent signed, he was not entitled to recover more than $1,200 for the injury, suffered by the animals in consequence of the collision. The view of the evidence on which the case went to the'jury, so far as the validity of this release was-concerned, seems to have been that there was testimony from which it could fairly be inferred that the plaintiff’s agent was-misled by the shipping clerk of the defendant at Buffalo in regard to the character of-the'paper which he signed, and was given to-understand that it related to his own application for a pass on the freight train, as a caretaker of the animals, and had no reference’ to the transportation of the ponies themselves. It does not seem to me, however, that such a view of the evidence is warranted by the record. The plaintiff’s agent, who made the shipment, and brought the ponies down, did not say a word indicating that anything whatever occurred between him and the shipping clerk from which he could have received a false idea as to the character of' the release. According to his testimony, he signed the paper at-the request of the representatives of the,railroad at Buffalo, without reading it, or having time to read it, just before the train left-with the horses on board. He does not testify to any statement, made to him by any person ás to the nature or effect of the paper; nor does he say anything from which it can be inferred that he-believed it to relate .in some way to a pass for himself. The latter-suggestion must have come from the testimony of the shipping clerk, who, upon his cross-examination, stated that the plaintiff’s-agent carne into the office at Buffalo to get his pass, and was told, when requested to sign the contract, that he would not require any pass, inasmuch as his name was put upon the running bill which went with the train. But this same witness had previously stated that the release was signed by the plaintiff’s agent before-the ponies were upon the train, and while he still had plenty of time to read the contract; and subsequently answered two questions by the court, as follows: ' “Q. When you spoke to him, did you say that this was a live-stock release? A. Yes, I always-called them ‘releases.’ Q. Those are the words you used to-Smith? A. Those are the words.” The plaintiff’s agent, Smith, was not called to contradict the shipping clerk in this respect, so-that there is uncontradicted testimony in the case to- che t effect-that be was told what the instrument was at the time he signed it. This evidence, it seems to me, should have been deemed controlling, particularly in view of the fact that two documents were-signed by the plaintiff’s agent at the time of the shipment. One was the release relating to the animals, which bears the signature, “P. Jones, Shipper, by Charles Smith, Shipper’s Agent.” The-other was a release of liability for any inj ury which might be sustained by the caretaker. This bears the signature “Charles Smith, in charge.” It is apparent, therefore, that Smith must have known that he signed more than one instrument, and, having; *767 heard one of them, characterized or described as a live-stock release, could not have supposed that it referred to anything else but the pones. There would have been a question for the jury on this branch of the case if he had testified to anything tending to show that he was misled us to the true nature of the contract limiting the liability for injury to the ponies, and had been able to deny the statement of the shipping clerk that lie called the instrument “ a live-stock release,” when he asked for the signature; but, in the absence of any denial in this respect,T think the contract should have been deemed valid and effectual. If it had been so regarded, the amount of the verdict would have •been restricted to $1,200. If the respondent will consent that the verdict be reduced to that amount and the' extra allowance-to $60, the judgment should be affirmed. Otherwise I think there-should be a reversal, and a new trial.
All concur.